Anthony O. Egbase, Esq. SB#181721
Law Offices of Anthony O. Egbase & Associates
350 S. Figueroa Street, Suite 189
Los Angeles, CA 90071
Tel: (213) 620-7070; Fax: (213) 620-1200

Attorney for Debtor and Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re. | CASE # 2:10-bk-39295-TD<br>Chapter 11 |
| **SEQUOIA DAY INVESTMENT INC.** | **DEBTOR'S MOTION FOR ORDER AUTHORIZING DEBTOR USE OF CASH COLLATERAL ON INTERIM BASIS PENDING A FINAL HEARING;** |
| Debtor-in-Possession | Memorandum of Points And Authorities In Support Thereof |
| | Filled Concurrently with Declaration of Theresa Aduba on Behalf Of Debtor in Support of First Day Motions |
| | <u>Hearing</u> |
| | Date: _____ TBD |
| | Time: _____ TBD |
| | Place: Courtroom 1345<br>255 East Temple Street,<br>Los Angeles, CA 90012 |

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL

TO THE HONORABLE THOMAS B. DONOVAN, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; THE DEBTOR'S TWENTY LARGEST UNSECURED CREDITORS; THE DEBTOR'S SECURED CREDITORS; AND ALL OTHER PARTIES ENTITLED TO NOTICE:

Pursuant to Local Bankruptcy Rules 2081-1(a)(9), 4001-2, 9075-1, and Section 363(c) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "Bankruptcy Code") and Rules 4001(d) and 9014 of the Federal Rules of Bankruptcy Procedure, **SEQUOIA DAY INVESTMENT INC.**, the debtor and debtor in possession in the above-captioned case ("CDC" or the "Debtor"), hereby brings this emergency motion (the "Motion") for the entry of an order :

(i) authorizing the Debtor to use cash collateral on an interim basis to make post petition mortgage payments to the creditors (Lenders) and pay for necessary operating expenses (building maintenance and utilities) pending a final hearing in accordance with the Debtor's post-petition operating budget (the "Budget"), a copy of which is attached as to this motion as Exhibit "A" and further annexed to the Declaration of Theresa Aduba on behalf of Debtor in Support of the Debtor's Emergency First Day Motion filed concurrently with this motion.

(ii) authorizing Debtor to grant first priority post-petition liens on and security interests in the property of the estate hereinafter described in favor of the Lenders to secure the use of cash collateral to the extent necessary to adequately protect the Lenders against any diminution in the value of its collateral from the date of the filing of the within Petition through the term of the proposed order filed attached hereto as Exhibit B (the "Proposed Order");

(iii approving the use of cash collateral on an interim basis pending final approval (the "Interim Order");

(iv) setting procedures for providing appropriate notice of the foregoing; and

(v) granting other related relief.

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL            1

The relief sought in this Motion is based upon this Motion, the annexed Memorandum of Points and Authorities and Declaration of Theresa Aduba (Aduba's Declaration) in support of the Motion, filed concurrently with Motion, the statements, arguments and representations of counsel to be made at the hearing on this Motion, and any other evidence properly presented to the Court at or prior to the hearing on this Motion.

Dated: July 15, 2010

Anthony O. Egbase, Esq.
Attorney for Debtor
Sequoia Day Investment, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### Summary

The Debtor filed a voluntary, petition under Chapter 11 of the Bankruptcy Code on July 16, 2010 (the "Petition Date"). The Debtor continues to operate its business, and manage its financial affairs and operate its bankruptcy estate as a debtor in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

1. By this Motion, Debtor Sequoia Day Investment Inc. "Sequoia" seeks interim authority to use the cash collateral of Beach Business Bank, J.P. Morgan Chase, and Specialized Loan Servicing, LLC "SLS, LLC", (collectively and hereinafter referred to as " Lenders"). As indicated in more detail below, and also in the Aduba's Declaration, Lenders claims and Debtor believes, after preliminary investigation including title search, that Lenders have perfected security interest in the cash collateral of the Debtor, for the rents received from the Debtor's real estate properties, (Subject Properties). The funds which is cash collateral, is the Debtor's only funds available to make the Debtors post petition mortgage payments and other necessary operating expense, as Debtor has been unable to secure other debtor-in-possession financing. While the Debtor will attempt to reach the terms of a consensual cash collateral arrangement with the Lenders, given the Debtor's immediate cash needs, the Debtor believes that there is an insufficient amount of time to finalize a consensual agreement with the Lender prior to the time of the hearing on the Motion.

2. Debtor owns 4 different real estate properties. To consummate the purchase of these properties, the Debtor entered into series of loan agreements with details as set forth below and on Exhibit G, attached herein and also annexed to the Declaration of Theresa Aduba in support of the First Day Motions.

3. Debtor's obligations under the Loan Agreements are secured by the first Deed of trust on the subject property on behalf of the lenders.

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL

4. Due to the exigent need for the debtor to use the cash collateral, the debtor seeks that the court makes an interim order allowing the Debtor to use the cash collateral while debtor engages in negotiation with the (Lenders) to agree upon the terms and conditions for the use by Debtor of Lender's cash collateral.

5. The Debtor's use of cash collateral is essential to Debtor's reorganization success, in that, the Debtor needs the cash from the funds generated as the rental income from the properties in order for the Debtor to pay for Debtor's post-petition expenses.

6. Specifically, the Debtor must be able to use cash collateral to pay for all necessary post-petition operating expenses including Loan Payments to the lenders, taxes, utilities, other necessary maintenance required in the properties. The Debtor must be able to pay expenses in accordance with the Budget pending a final hearing in order to avoid immediate and irreparable harm to the Debtor's real estate properties and this bankruptcy estate.

7. Approval of the use of cash collateral is necessary to enable Debtor to pay the post petition loan payments to the lenders, and to engage in other necessary post-petition operating expenses including property maintenance, taxes, utilities, inventory and other normal and necessary operating expenses of the estates rental business.

A. Background.

i. Business operations of Debtor

8. Sequoia Day Investment Inc. was founded as a real estate property investment and Management Company. The company engages in the business of real estate property investment and leasing and it currently possesses 4 real estate properties.

9. The real estate properties are located in Los Angeles County, California, with the following addresses. (i) 124 E. Buckthorn street, Inglewood, Ca 90301. (ii) 12313 York Avenue Hawthorne, California 90250 (iii) 519 Moorehaven Drive, Carson California 90746 and (iv) 13663 Prairie Avenue, Hawthorne, California 90250

10. Except for the 2 vacant units in the Prairie Avenue property, and one vacant unit in the York Avenue Property, the rest of the Debtor's real estate properties are currently

occupied by tenants under lease terms. Debtor's Principal Theresa Aduba overseer the administration of the lease transactions and the management of the properties.

11. Debtors currently generates about $22,462 per month in revenue as rental income, and its total expense is $27,710 per month, of which Debtor's total monthly mortgage expenses is $19,775 per month.

12. ii. **Pre-petition History.**

13. The Debtor's financial difficulties started in 2008, when the Debtor had low cash flow due to vacancies in the properties and inability of the Debtor's principal to provide the required financial support to the Debtor. Consequently the Debtor fell behind on its tax liability on the properties.

14. As the Debtor's cash flow improved, it tried to resolve the delinquent taxes on the properties, just then Lender J.P. Morgan Chase proceeded to pay all the delinquent taxes on the property located at 12313 York Avenue Hawthorne, California 90250, (the York Avenue property). Lender J.P. Morgan Chase has refused to engage in any work out arrangement with the Debtor to redress the delinquent taxes that it paid on the York Avenue property, instead lender J.P. Morgan Chase insisted on foreclosing on the real estate property.

15. Lender J.P Morgan Chase Bank proceeded to commence a foreclosure proceeding on the York Avenue property. Further on July 9, 2010, Lender J.P. Morgan Chase Bank filed an action in Los Angeles Superior Court and also procured an order appointing a receiver to take charge of the management of the York Avenue property pending the sale.

Additional information on Debtor and the events leading up to this case are set forth in the Aduba's Declaration concurrently filed herewith

**B. Description of Debtors Major Assets and Liabilities.**

16. Debtors currently generates a approximately $22,462 in total revenue, (rental income) from the real estate properties. Debtor's total mortgage loan liability on the real estate properties is 19,742 per month to the lenders

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL                    5

17. Based on the Debtors' unaudited books and records, as of July, 2010, the Debtor's assets totaled approximately $3,063,297 Million. All of the Debtors revenue is derived from the rental income from the real estate properties.

18. Based on the Debtors' unaudited books and records, as of July, 2010, Debtor liabilities totaled approximately $2.86 million, excluding the liability to the insider. The Debtor's principal liabilities consisted of (i) approximately $2.8 million in current loans securing the real estate properties on behalf of the Lenders (ii) approximately $6,500 in tenants security Deposits.

19. The Debtors' main secured creditors are the lenders detailed below and also detailed on Exhibit G, attached herein..

### Creditors' Committee

20. No creditors' committee has yet been appointed by the United States Trustee

21. **Jurisdiction**. The Court has jurisdiction over this motion pursuant to 28 U.S.C. 157(b)(2). Venue in this District and this motion are proper pursuant to 28 U.S.C. §§ 1408 and 1409.The statutory predicates for the relief requested herein are sections 363, 1107(a) and 1108 of the Bankruptcy Code.

22. **Debtor Pre-Petition Financing** The Pre-petition Loan Documents. Debtor and Lenders entered into certain loan arrangements evidenced by, among other things, the following documents, instruments and agreements (hereinafter, collectively with all other related documents, the "Loan Documents") attached herein as

   i) **Exhibit C** for Beach Business Bank, re. property located at 13663 Prairie Avenue, Hawthorne, California 90250 (the Prairie Avenue, Property);

   ii) **Exhibit D** for J.P. Morgan Chase Bank, Re. property located at 12313 York Avenue Hawthorne, California 90250 (the York Avenue property),

   iii) **Exhibit E** for J.P. Morgan Chase Bank, Re. property located at 124 E. Buckthorn street, Inglewood, Ca 90301 (the Buckton Street property) and ;

   iv) **Exhibit F** for Specialized Loan Servicing "SLS, LLC" Re. 519 Moorehaven Drive, Carson California 90746 (the Moorehaven Drive property)

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL

**Exhibit C; for Beach Business Bank, in re. the Prairie Avenue, Property**

C(i).     Business Loan Agreement; Dated- July 25, 2006

C(ii).    Promissory Note; Dated- July 25, 2006

C(iii).   Settlement Sheet; Dated- July 25, 2006

C(iv).    Agreement To Provide Insurance- July 25, 2006

C(v).     Commercial Security Agreement; Dated- July 25, 2006

C(vi).    Deed of Trust; Dated- July 25, 2006

C(vii).   Assignment of Rents; Dated- July 25, 2006

C(viii).  Hazardous Substances Agreement; Dated- July 25, 2006

C(ix)     Unconditional Guarantee; Dated- July 25, 2006

C(x).     Corporate Resolution To Grant Collateral Guarantee; Dated- July 25, 2006

C(xi).    Standby Creditor Agreement; Dated- July 25, 2006

**Exhibit D for J.P. Morgan Chase Bank, in re. the York Avenue property,**

D(i).    Promissory Note; Dated- May 15, 2007

D(ii)    Deed of Trust, Security Agreement and Assignment of Leases and Rents and Fixture filing. Dated- May 15, 2007

**Exhibit E for J.P. Morgan Chase Bank for the Buckton Street property and ;**

E(i).    Borrowers Instructions Dated; Dated- May 15, 2007

E(ii).   Promissory Note; Dated- May 15, 2007

E(iii).  Deed of Trust, Security Agreement and Assignment of Leases and Rent and Fixture Filing Dated May 15, 2007.

**Exhibit F for Specialized Loan Servicing "SLS, LLC", in re. the Moorehaven Drive property**

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL

F(i). Promissory Note; Dated- May 17, 2005

F(ii). Deed of Trust; Dated- May 17, 2005

i. The lenders claim as principal due, monthly payment terms and estimated value of each of the real estate properties is detailed on **Exhibit G**, annexed herein and also attached as Exh. 3, to the Aduba's declaration in support of the First Day Motions.

j. Upon information and belief, Beach Business Bank claims that the amount due under the Loan Documents as of June, 2010, in relation to the property located at, 13663 Prairie Avenue, Hawthorne, California 90250 " Prairie Avenue property" (collectively, the "Pre-petition Indebtedness") is $608,998

k. Upon information and belief, Lender J.P. Mogan Chase claims that the amount due under the Loan Documents as of June, 2010, in relation to the property located at, 12313 York Avenue Hawthorne, California 90250 "York Avenue property" (collectively, the "Pre-petition Indebtedness") is $1,027,923

l. Upon information and belief, Lender J.P. Mogan Chase claims that the amount due under the Loan Documents as of June, 2010, in relation to the property located at, 124 E. Buckthorn street, Inglewood, Ca 90301,"the Buckton Street property" (collectively, the "Pre-petition Indebtedness") is $771,275.

m. Upon information and belief, Lender SLS, LLC claims that the amount due under the Loan Documents as of June, 2010 in relation to the property located at, 519 Moorehaven Drive, Carson California 90746 "the Moorehaven Drive, property" (collectively, the "Pre-petition Indebtedness") is $450,800.

n. **Pre-petition Collateral.**

Lenders interest in the real properties are secured by deed of trust and lenders assert that the Pre-petition Indebtedness is secured by substantially the Debtor's real estate properties including rent receipts and fixtures. Subject to verification by post-petition appraisals, Debtors believes that the net salable value of the Pre-petition collateral is as detailed below and also on **Exhibit G** as "Estimated Value Basis":

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL.    6

i) $600,00 for the Prairie Avenue property.

ii) $900,000 for the York Avenue property.

iii) $800,000 for the Buckton Street property

iv) $330 for the Moorehaven Drive, Property

**Perfection of Pre-petition Security Interests and Liens.** The Debtor is not, by the filing of this motion, waiving any right to contest the amount due under the Loan Documents or the priority or perfection of the Security Interests alleged to be held by Lender.

o. **Pre-petition History.**

**Debtor's Urgent Need for Use of Cash Collateral**

p. Pursuant to the loan documents, Lenders claims a security interest in all rent receipts from the Subject property. As of the petition date, the Debtor does not have unencumbered cash to handle the financial obligations without the use of the post-petition proceeds of rent receipts. Specifically, without the use of said cash collateral, the Debtors cannot pay mortgage payments to the lenders nor make payment for necessary upkeep expenses required to keep the property viable for the tenants and to avoid waste.

q. The consequences of leaving Debtor without use of cash collateral would have a materially adverse affect on the estate and their creditors. Without the immediate access to cash collateral, the Debtor will not be able to make the mortgage payments to the Lenders nor pay for any necessary expenses required for the upkeep and maintenance of the properties. Such an interruption will make the properties not viable for the tenants, and therein resulting to an erosion of the value of the property and estate.

r. In exercise of sound business judgment, the Debtor believes that the required use of the Lenders cash collateral in the specific monthly amounts detailed on the cash flow budget attached herein as Exhibit A, and also attached to the Proposed Interim Order attached hereto. The cash flow budget reflects the specific uses to which the funds will be put for the period to be determined by this court

s.  The value of the Debtor's estate can only be maximized through continued operation and viability of the real estate properties. The tenants and the Debtors business are dependent on the viability of the real estate properties real property which is dependent on paying for its post expenses (mortgage payments, taxes, utilities, maintenance).

t.  Based upon the foregoing, it is evident that the consequences of leaving Debtor without use of cash collateral would have a materially adverse affect on the estate and its creditors. Without the immediate access to cash collateral, the Debtor's business operations will be disrupted.

u.  A copy of the Debtor's proposed post-petition operating budget (the "Budget") is attached as Exhibit A and also annexed Declaration of Theresa Aduba. The expenses contained in the Budget are those expenses the Debtor believes must be paid to enable the Debtor to avoid immediate and irreparable harm to the Debtor's bankruptcy estate. The rental revenues projected in the Budget are the revenues the Debtor projects receiving as rental income.

v.  As set forth in the Budget, the projections are based upon the following assumptions: The Budget assumes that the Debtor will not suffer any interruption or reduction to its current tenancy census resulting from the filing of its Chapter 11 bankruptcy case, further the Budget assumes that the Debtor will receive the typical cash flow benefit resulting from the automatic stay and the fact that pre-petition unsecured creditors are not paid post-petition until the Debtor reorganizes through a confirmed plan of reorganization.

w.  As further adequate protection, the Debtor also proposes to provide the Lender (and any other creditor who asserts a lien against the Debtor's cash collateral) with a replacement lien against the Debtor's assets, with such replacement lien to have the same extent, validity, and priority as the pre-petition lien held by such creditor.

**Relief Requested:**

x.  By this Motion, Debtor requests, pursuant to § 363(c)(2) of the Bankruptcy Code, that this Court enter an order authorizing Debtor to use cash collateral of the Lender in the specific

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL    10

amounts set forth in Exhibit A. In connection with the foregoing, Debtor also offers to adequately protect the interests of Lender by granting post-petition liens on, and security interest in, the property of the estate in favor of the Lenders as adequate protection for their secured claims and by making adequate protection payments to Lenders in the amount equal to its present secured interest in debtor's properties.

**Approval of the Proposed order is in the Best Interests Creditors and the Estate.**

y.  Debtor believes that the terms and conditions of the Proposed Order are fair and reasonable. Debtor has engaged in a reasonable exploration of the availability of alternate credit and is unable to obtain post-petition credit.

z.  Entry of the Proposed Order is in the best interests of Debtor, its estate and creditors and will enable Debtor among other things, to (i) pay post petition mortgage payments to the lenders, (ii) pay utilities and maintain continuity of operations, and (iii) maximize the value of the business and property. In addition, the availability of funds under the Proposed Order will instill confidence in the creditors of Debtor which will facilitate a smooth transition into Chapter 11 and a successful reorganization.

aa.  Moreover, Debtor submits that the use of cash collateral contemplated by the Proposed Order is appropriate and proper under the facts herein. Rental income available to the Debtor is claimed by the Lender to constitute cash collateral within the meaning of section 363 of the Bankruptcy Code. As indicated above, Debtor cannot maintain the estate post-petition without the use of its rental income.

bb.  Based upon the foregoing, Debtor urges the Court to approve the proposed Order, thereby authorizing Debtor to use cash collateral and incur the secured obligations as provided therein.

**Notice and Final Hearing.**

cc.  No trustee, examiner or creditors' committee has been appointed in this Chapter 11 case. Notice of this Motion has been given to the United States Trustee, the Lenders, and the Debtor's twenty largest creditors and their counsel, if known. Debtor submits that such notice is

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL                    12

appropriate and sufficient pursuant to Local Rule 4001-2(b), and Debtor's imminent and urgent need for working capital.

dd.     Pursuant to Bankruptcy Rule 4001, Debtor respectfully requests that this Court schedule a final hearing on the relief sought in this Motion for a date on or shortly after _____ (which is after 20 days from the service of the Motion on and _____ ). Debtor further requests that it be authorized to provide notice of the final hearing by serving a copy of the Motion, together with the order approving the Proposed Order on an interim basis, upon (I) the United States Trustee, (ii) counsel for any committee of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code, (iii) counsel for the Lender or the lenders, (iv) the Debtor's Pre-petition unofficial committee of unsecured creditors, (v) any other party which has filed a request for special notice with this Court and served such request on Debtor's counsel, (vi) the list of twenty largest unsecured creditors included on the list filed by Debtor pursuant to Rule 1007, and such taxing authorities as may hold any claim against the Debtors by overnight mail no later than (except for (I) counsel to the Committee, which will be served as soon as practicable after formation and retention and (ii) any party requesting notice, who will be served as soon as practicable after Debtor's counsel receipt of such request).

ee.     No Prior Request No previous request for the relief sought in this motion has been made to this or any other Court.

## DISCUSSION

A.     **The Debtor Must Be Authorized To Use Cash Collateral to Operate, Maintain and Preserve Its Business in Accordance with the Budget.**

The Debtor's use of property of its estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section . . . .1108. . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. §363(c)(1). A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363. See 11 U.S.C. §1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and an entity other than the estate have an interest. . . ." 11 U.S.C. §363(a). Section 363(c)(2) allows the use of "cash collateral" under subsection (OW if:

(A) each entity that has an interest in such cash collateral consents; or
(B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

See 11 U. S.C. §363(c)(2)(A) and (B).

It is well settled that it is appropriate for a Chapter 11 debtor to use cash collateral for the purpose of maintaining and operating its property. 11 U.S.C. § 363(c)(2)(B); In re Oak Glen R-Vee, 8 B.R. 213, 216 (Bankr. CD. Cal. 1981); In re Tucson Industrial Partners, 129 B.R. 614 (B.A.P. 9th Cir. 1991). In addition, where the debtor is operating a business, it is extremely important that the access to cash collateral be allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business." In re Dynaco Corporation, 162 B.R. 389 (Bankr. D.N.H. 1993), quoting In re Stein, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982).

The source of revenue available to the Debtor to use to operate, maintain and preserve the real estate properties, significantly includes the funds generated from the rental income on the subject property. Debtor will have no ability to pay for the necessary and required post petition operating expenses required to keep the building viable, unless the Debtor is able to use its cash. The cash which includes cash collateral of the Lenders, is necessary for the Debtor to pay the lender's mortgage payments and other Debtor's ordinary operating expenses, including, but not limited to, mortgage payments, utilities, taxes, insurance, and security, trash removal and maintenance (repair) expenses.

### B. The Lender Is Adequately Protected by the Debtor's Continued Use Of Cash Collateral Since the Use Of Cash Collateral Preserves The Creditor's Secured Lien

To the extent that an entity has a valid security interest in the revenues generated by property, those revenues constitute "cash collateral" under Section 363(a) of the Bankruptcy Code. Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the secured creditor is adequately protected. In re Mellor, 734 F.2d 1396, 1400 (9th Cir. 1984). See also In re O'Connor, 808 F.2d 1393, 1398 (10th Cir. 1987); In re McCombs Properties VI, Ltd., 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988) ("McCombs").

Pursuant to the Supreme Court case of United Savings Association v. Timbers of Inwood Forest Associates, 108 S.Ct. 626, 629 (1988) ("Timbers") and subsequent case law, the property interest that a debtor must adequately protect pursuant to Sections 361(1) and (2) of the Bankruptcy Code is only the value of the lien that secures the creditor's claim. 108 S.Ct. at 630. See also McCombs, Id., at 266. Section 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount of the] claim or the value of the collateral." McCombs, Id., at 266.

The law is also clear that the preservation of the value of a secured creditor's lien is sufficient to provide adequate protection to a secured creditor when a debtor seeks to use cash collateral. In re Triplett, 87 B.R. 25 (Bankr. W.D.Tex. 1988). See also In re Stein, 19 B.R. 458 (Bankr. E.D.Pa. 1982).

Additionally, in determining adequate protection, Courts have stressed the importance of promoting a debtor's reorganization. In In re O'Connor, supra, the Tenth Circuit stated:

> In this case, Debtors, in the midst of a Chapter 11 proceeding, have proposed to deal with cash collateral for the purpose of enhancing the prospects of reorganization. This quest is the ultimate goal of Chapter 11. Hence, the Debtor's efforts are not only to be encouraged, but also their efforts during the administration of the proceeding are to be measured in light of that quest. Because the ultimate benefit to be achieved by a successful reorganization inures to all the creditors of the estate, a fair opportunity must be given to the Debtors to achieve that end. Thus, while interests of the secured creditor whose property rights are of concern to the court, the interests of all other creditors also have bearing upon the

MOTION FOR ORDER AUTHORIZING DEBTOR TO USE CASH COLLATERAL.    14

question of whether use of cash collateral shall be permitted during the early stages of administration.

808 F.2d at 1937.

The Debtor's request to use cash collateral to make payment for the necessary expenses required for the upkeep of the commercial real estate herein, would help to avoid a demolition of the real estate properties and therein equates to preservation of the real estate properties (creditor's collateral). Further the requested use of cash collateral includes the making of the post petition mortgage payments to the lender and therein advancing the prospects of reorganization. . .

## CONCLUSION

WHEREFORE, Debtor respectfully requests that this Court enter an Order in the form annexed hereto , which among other things;

1. Authorizes Debtor to use the cash collateral of the Lender;

2. Sets the last time and date for the filing of objections to approval of the Proposed Order on a final basis;

3. If an objection to the approval of the Proposed Order on final basis is filed, sets a hearing at a time and place set forth therein to consider approving the Proposed Order on a final basis pursuant to Bankruptcy Rule 4001;

4. After the final hearing (if necessary), enter a final order, authorizing Debtor to utilize the cash collateral in accordance with the terms and subject to the provisions of the Proposed Order; and

5. Grant such other and further relief as is just and proper.

Dated: July 16, 2010                          /s/ Anthony O. Egbase
                                              _____
                                              Anthony O. Egbase, Esq
                                              Proposed Reorganization Attorney for Debtor

| In re: | | CHAPTER: 11 |
|---|---|---|
| Sequoia Day Investment, Inc. | Debtor(s). | CASE NUMBER: 2:10-bk-39295 |

NOTE: When using this form to indicate service of a proposed order, DO NOT list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on a CM/ECF docket.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

World Trade Center, 350 S. Figueroa Street, Suite 189, Los Angeles, CA 90071

A true and correct copy of the foregoing document described as   DEBTOR'S EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR USE OF CASH COLLATERAL ON INTERIM BASIS PENDING A FINAL HEARING   will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d), and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On   7/19/2010   I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email addressed indicated below:

☒ Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL** (indicate method for each person or entity served):
On   7/19/2010   I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follow. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____ I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 19, 2010 | JOANNE SANCHEZ | /s/ |
|---|---|---|
| Date | Type Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009
Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

F 9013-3.1
Best Case Bankruptcy

Sequoia Day Investment, Inc.
35 Via Costa Verde, Rancho Palos Verdes
Rancho Palos Verdes, CA 90275


Anthony O. Egbase
Law Office of Anthony O. Egbase & Associates
The World Trade Center
350 S. Figueroa Street, Suite 189
Los Angeles, CA 90


BAC Home Loan Servicing, Lp
PO Box 10219
Van Nuys, CA 91410


Bank Of America
Attn: Bankruptcy NC4-105-03-14
Po Box 26012
Greensboro, NC 27410


Beach Business Bank
1230 Rosecrans Ave,, Suite 100
Manhattan Beach, CA 90266


Capital One Bank
11013 W Board Sr
Glen Allen, VA 23060


Chase
po box 94014
Palatine, IL 60094-4014


Chase
P.O. Box 94014
Palatine, IL 60094

Chase Home Finance
PO Box 24573
Columbus, OH 43224


Citi
PO Box 6241
Sioux Falls, SD 57117


Mitchell B. Ludwig
Knapp, Ptersen & Clerk
550 N. Brand, Suite 1500
Glendale, CA 91203


Oxford Collection Services
135 Maxess Road
Melville, NY 11747


Specialized Loan Servicing, LLC
PO Box 636005
Littleton, CO 80163


United Savings Bank
711 Van Ness Ave, Suite 270
San Francisco, CA 94102


United States Trustee
725 So. Figueroa St.
26th Floor
Los Angeles, CA 90017